UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TEXTRON FINANCIAL CORPORATION, Plaintiff, | : | CA 04 222 T |
| v. | : | C.A. No. |
| GEORGE W. STEVENS, Defendant. | : | |

**COMPLAINT**

Plaintiff Textron Financial Corporation ("Textron"), as and for its Complaint against Defendant George W. Stevens ("Stevens"), hereby alleges as follows:

**Parties**

1. Plaintiff Textron is a Delaware corporation whose principal place of business is 40 Westminster Street, Providence, Rhode Island.

2. On information and belief, Defendant Stevens is a resident of the State of Indiana.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs. Stevens has consented to personal jurisdiction in Rhode Island.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

1

**Factual Allegations**

5. On or about October 26, 1999, St. George Broadcasting, LLC ("St. George") executed and delivered to Textron a Term Note, whereby St. George promised to pay to Textron the amount of $3,000,000, plus interest pursuant to the terms of a Credit Agreement, which was incorporated by reference into the Term Note. A true and accurate copy of the Term Note is attached hereto as Exhibit A and incorporated herein by reference.

6. On or about October 26, 1999, St. George executed and delivered to Textron a Promissory Note, whereby St. George promised to pay to Textron the amount of $600,000, plus interest pursuant to the terms of a Credit Agreement, which was incorporated by reference into the Promissory Note. A true and accurate copy of the Promissory Note is attached hereto as Exhibit B and incorporated herein by reference.

7. St. George has failed to make required payments under the Term Note and the Promissory Note, and as such, has defaulted on both notes. Consequently, St. George currently owes the entire outstanding balance of both notes to Textron.

8. To date, the combined outstanding balance on these notes is at least $3,600,000.00.

9. On or about October 26, 1999, Stevens executed and delivered to Textron an Unconditional Guarantee, whereby Stevens personally and unconditionally guaranteed all amounts due under the Term Note and Promissory Note. A true and accurate copy of the Unconditional Guarantee is attached hereto as Exhibit C and incorporated herein by reference.

10. The Term Note, Promissory Note and Unconditional Guarantee contain attorney's fees provisions obligating the maker and guarantor to pay all reasonable attorney's fees and other costs related to Textron's collection of amounts due thereunder.

11. Due to St. George's default of the Term Note and the Promissory Note, Stevens owes Textron all amounts currently due thereunder, specifically at least $3,600,000.00, along with Textron's attorney's fees and other costs associated with this matter.

**COUNT I**
**(Breach of Contract)**

12. Textron restates and realleges the allegations contained in paragraphs 1 through 11 as if set forth fully herein.

13. By failing to pay Textron as required by the Unconditional Guarantee, Stevens is in breach of the Unconditional Guarantee, and Textron has suffered consequential damages as a result.

WHEREFORE, Textron Financial Corporation requests Judgment in its favor, and against George W. Stevens, and demands the following relief:

a. Compensatory damages in the amount of at least $3,600,000.00, as set forth above;

b. Additional consequential damages;

c. Costs;

d. Prejudgment interest;

e. Attorneys' fees and other costs of collection, pursuant to the Term Note, Promissory Note and the Unconditional Guarantee; and

f. Such further relief as this Court deems appropriate.

TEXTRON FINANCIAL
CORPORATION

By its Attorney,

Armando E. Batastini (#6016)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Date: June 3, 2004

(A)

Original delivered to K. Marien 10/29/99

# TERM NOTE

Hammond, Indiana

**$3,000,000** October 29, 1999

FOR VALUE RECEIVED, the undersigned, **ST. GEORGE BROADCASTING, LLC**, a Delaware limited liability company; (the "Maker"), hereby promises to pay to the order of **TEXTRON FINANCIAL CORPORATION**, a Delaware corporation, having an address at c/o Westminster Development Bank, 40 Westminster Street, 6th Floor, Providence, Rhode Island 02903 (the "Payee"), the principal sum of **THREE MILLION DOLLARS ($3,000,000)** or, if less, the aggregate unpaid principal amount of First Term Loans hereunder made by the Payee to the Maker pursuant to that certain Credit Agreement of even date herewith, as the same may be amended, restated, renewed, replaced, supplemented or otherwise modified from time to time hereafter (the "Credit Agreement"), by and among the Maker, the Payee, the other Lenders referred to therein and Textron Financial Corporation, as Agent for the Lenders (with its successors and assigns in such capacity, the "Agent"), together with interest on any and all principal remaining unpaid hereunder from the date hereof until payment in full, payable on the dates and at the interest rate or rates specified in the Credit Agreement. Capitalized terms used in this Note without definition have the meanings assigned to them in the Credit Agreement.

The aggregate principal amount outstanding hereunder shall be payable as provided in the Credit Agreement. This Note may be prepaid in accordance with the terms and provisions of the Credit Agreement, subject to the payment of certain prepayment premiums under **Section 1.06** of the Credit Agreement.

All principal and interest hereunder are payable in lawful money of the United States of America to the Payee at the address specified in the Credit Agreement in immediately available funds as provided in the Credit Agreement on the date on which such payment shall become due. Payments of principal and interest hereunder which are not made by such date may be made by debiting the deposit account(s), if any, in the name of any Maker with the Agent or any Lender. The Maker hereby irrevocably authorizes the Agent and the Lenders to so debit such deposit account(s).

The Maker, for itself and its legal representatives, successors and assigns, to the extent it may lawfully do so, hereby expressly waives presentment, demand, protest, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, and the benefit of any exemption or insolvency laws, and consents that the Agent and the Lenders may release or surrender, exchange or substitute any personal property or other collateral security now held or which may hereafter be held as security for the payment of this Note, and may extend the time for payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced hereby to the extent provided in the Credit Agreement without in any way affecting the liability of the Maker; provided that such modifications do not increase the obligations hereunder.

instruments and agreements are hereby made part of this Note and are deemed incorporated herein in full. The occurrence or existence of an Event of Default shall constitute a default under this Note and shall entitle the Agent and the Payee to accelerate the entire indebtedness hereunder and to take such other action as may be provided for in the Credit Agreement or any other instrument or agreement evidencing and/or securing this Note, all in accordance with the terms of the Credit Agreement.

All agreements between or among the Maker and the Agent, the Payee and the other Lenders are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness or otherwise, shall the amount paid or agreed to be paid for the use or forbearance of the indebtedness evidenced hereby exceed the maximum amount which the Payee or any other Lender is permitted to receive under applicable law. If, from any circumstances whatsoever, fulfillment of any provision hereof or of the Credit Agreement, at the time performance of such provision shall be due, shall involve exceeding such amount, then the obligation to be fulfilled shall automatically be reduced to the limit of such validity and if, from any circumstances, the Payee should ever receive as interest an amount which would exceed such maximum amount, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. This provision shall control every other provision of all agreements between or among the Maker and the Payee, the Agent and any Lender.

**This Note and all transactions hereunder and/or evidenced herein shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana applicable to contracts made and performed in said State.**

If this Note shall not be paid when due and shall be placed by the holder hereof in the hands of any attorney for collection, through legal proceedings or otherwise, the Maker agrees to pay reasonable attorneys' fees to the holder hereof together with reasonable costs and expenses of collection, including, without limitation, any such attorneys' fees, costs and expenses relating to any proceedings with respect to the bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation of any of the Maker or any party (other than the Payee or any other Lender) to any instrument or agreement securing this Note.

The Maker shall pay all amounts owing pursuant to this Note without relief from valuation and/or appraisement laws.

***The next page is the signature page***

IN WITNESS WHEREOF, the Maker has caused this Note to be executed under seal by its duly authorized representatives as of the date first above written.

ST. GEORGE BROADCASTING, LLC

By: George Stevens

Title: President

ACKNOWLEDGMENT

STATE OF INDIANA
COUNTY OF LAKE ) ss. October 26 1999

The foregoing instrument was personally acknowledged before me this 26th day of October, 1999 by George Stevens and ____________________, each Members of ST. GEORGE BROADCASTING, LLC, a Delaware limited liability company on behalf of said company as their free act and deed and free act and deed of said company.

Cynthia A. Kasper
Notary Public
My commission expires: 6-12-2000

B

Original delivered to K. Marien 10/29/99

# PROMISSORY NOTE

Hammond, Indiana
October 29, 1999

**$600,000**

FOR VALUE RECEIVED, the undersigned, **ST. GEORGE BROADCASTING, LLC**, a Delaware limited liability company; (the "Maker"), hereby promises to pay to the order of **TEXTRON FINANCIAL CORPORATION**, a Delaware corporation, having an address at c/o Westminster Development Bank, 40 Westminster Street, 6th Floor, Providence, Rhode Island 02903 (the "Payee"), the principal sum of **SIX HUNDRED THOUSAND DOLLARS ($600,000)** or, if less, the aggregate unpaid principal amount of Second Term Loans hereunder made by the Payee to the Maker pursuant to that certain Credit Agreement of even date herewith, as the same may be amended, restated, renewed, replaced, supplemented or otherwise modified from time to time hereafter (the "Credit Agreement"), by and among the Maker, the Payee, the other Lenders referred to therein and Textron Financial Corporation, as Agent for the Lenders (with its successors and assigns in such capacity, the "Agent"), together with interest on any and all principal remaining unpaid hereunder from the date hereof until payment in full, payable on the dates and at the interest rate or rates specified in the Credit Agreement. Capitalized terms used in this Note without definition have the meanings assigned to them in the Credit Agreement.

The aggregate principal amount outstanding hereunder shall be payable as provided in the Credit Agreement. This Note may be prepaid in accordance with the terms and provisions of the Credit Agreement, subject to the payment of certain prepayment premiums under **Section 1.06** of the Credit Agreement.

All principal and interest hereunder are payable in lawful money of the United States of America to the Payee at the address specified in the Credit Agreement in immediately available funds as provided in the Credit Agreement on the date on which such payment shall become due. Payments of principal and interest hereunder which are not made by such date may be made by debiting the deposit account(s), if any, in the name of any Maker with the Agent or any Lender. The Maker hereby irrevocably authorizes the Agent and the Lenders to so debit such deposit account(s).

The Maker, for itself and its legal representatives, successors and assigns, to the extent it may lawfully do so, hereby expressly waives presentment, demand, protest, notice of protest, presentment for the purpose of accelerating maturity, diligence in collection, and the benefit of any exemption or insolvency laws, and consents that the Agent and the Lenders may release or surrender, exchange or substitute any personal property or other collateral security now held or which may hereafter be held as security for the payment of this Note, and may extend the time for payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced hereby to the extent provided in the Credit Agreement without in any way affecting the liability of the Maker; provided that such modifications do not increase the obligations hereunder.

instruments and agreements are hereby made part of this Note and are deemed incorporated herein in full. The occurrence or existence of an Event of Default shall constitute a default under this Note and shall entitle the Agent and the Payee to accelerate the entire indebtedness hereunder and to take such other action as may be provided for in the Credit Agreement or any other instrument or agreement evidencing and/or securing this Note, all in accordance with the terms of the Credit Agreement.

All agreements between or among the Maker and the Agent, the Payee and the other Lenders are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness or otherwise, shall the amount paid or agreed to be paid for the use or forbearance of the indebtedness evidenced hereby exceed the maximum amount which the Payee or any other Lender is permitted to receive under applicable law. If, from any circumstances whatsoever, fulfillment of any provision hereof or of the Credit Agreement, at the time performance of such provision shall be due, shall involve exceeding such amount, then the obligation to be fulfilled shall automatically be reduced to the limit of such validity and if, from any circumstances, the Payee should ever receive as interest an amount which would exceed such maximum amount, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. This provision shall control every other provision of all agreements between or among the Maker and the Payee, the Agent and any Lender.

**This Note and all transactions hereunder and/or evidenced herein shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana applicable to contracts made and performed in said State.**

If this Note shall not be paid when due and shall be placed by the holder hereof in the hands of any attorney for collection, through legal proceedings or otherwise, the Maker agrees to pay reasonable attorneys' fees to the holder hereof together with reasonable costs and expenses of collection, including, without limitation, any such attorneys' fees, costs and expenses relating to any proceedings with respect to the bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation of any of the Maker or any party (other than the Payee or any other Lender) to any instrument or agreement securing this Note.

The Maker shall pay all amounts owing pursuant to this Note without relief from valuation and/or appraisement laws.

***The next page is the signature page***

IN WITNESS WHEREOF, the Maker has caused this Note to be executed under seal by its duly authorized representatives as of the date first above written.

**ST. GEORGE BROADCASTING, LLC**

By: George Stevens

Title: President

ACKNOWLEDGMENT

STATE OF INDIANA
COUNTY OF LAKE ) ss. October 26, 1999

The foregoing instrument was personally acknowledged before me this 26th day of October, 1999 by George Stevens and ____________________, each Members of ST. GEORGE BROADCASTING, LLC, a Delaware limited liability company on behalf of said company as their free act and deed and free act and deed of said company.

Cynthia A. Kasper
Notary Public
My commission expires: 6-12-2000

C

# UNCONDITIONAL GUARANTY

**THIS UNCONDITIONAL GUARANTY** is made as of the 29th day of October, 1999, by **GEORGE W. STEVENS**, having an address at 5010 Spinnaker Land, Unit C, Crown Point, Indiana 46307 (the "Guarantor"), to and with **TEXTRON FINANCIAL CORPORATION**, a Delaware corporation, as agent (in such capacity together with its successors and assigns in such capacity, the "Agent") for the benefit of the financial institutions and other Persons which are or which become Lenders under, and as defined in, the Credit Agreement referred to below (the Lenders are collectively referred to herein as the "Lenders").

W I T N E S S E T H  T H A T:

WHEREAS, pursuant to, and subject to certain terms and conditions contained in, a certain Credit Agreement as of even date herewith, as the same may be amended, renewed, restated or extended from time to time (the "Credit Agreement") by and between the Agent, the Lenders, as lenders thereunder, and **ST. GEORGE BROADCASTING, LLC**, a Delaware limited liability company (the "Borrower"), as borrower thereunder, the Lenders have agreed to make term loans in an aggregate principal amount of up to Three Million Six Hundred Thousand Dollars ($3,600,000) to the Borrower, such loans to be evidenced by the Borrower's (a) Term Note of even date herewith in the original principal amount of Three Million Dollars ($3,000,000) and (b) Promissory Note of even date herewith in the original principal amount of Six Hundred Thousand Dollars ($600,000), both as may be amended, renewed, extended or refinanced from time to time (collectively, the "Notes"); and

WHEREAS, the Guarantor is a member of the Borrower and the Borrower is an important source of revenue for the Guarantor, and therefore the Guarantor has a substantial interest in the Borrower; and

WHEREAS, the Agent and the Lenders have advised the Guarantor that it will not enter into the aforesaid loan transactions with the Borrower unless, among other matters, all of the obligations of the Borrower under the Notes and certain other agreements as hereinafter provided, including, without limitation, the punctual payment of both principal and interest to be paid, are guaranteed by the Guarantor; and

WHEREAS, the Guarantor is willing and has voluntarily and freely agreed to guarantee the payment of the aforesaid obligations as hereinafter provided.

NOW, THEREFORE, in order to induce the Agent and the Lenders to enter into the aforesaid loan transactions and to make said loan to the Borrower and in consideration of the premises and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Guarantor hereby covenants and agrees as follows:

1. The Guarantor, as primary obligor and not merely as surety, hereby, absolutely, unconditionally and irrevocably, guarantees: (i) the due and punctual payment in full (and not

merely the collectibility) of the principal of the Notes, and the interest thereon, in each case when due and payable, according to the terms of the Notes, whether at stated maturity, by reason of acceleration or otherwise; (ii) the due and punctual payment in full (and not merely the collectibility) of all other sums and charges which may at any time be due and payable in accordance with, or under the terms of, the Notes, whether at stated maturity, by reason of acceleration or otherwise; (iii) the due and punctual payment (and not merely the collectibility), performance and observance of all of the other obligations, terms, covenants and conditions contained in the Notes, the Credit Agreement, all agreements and instruments at any time executed in connection with the Notes, the Credit Agreement and any other security instruments and agreements relating to the Notes or the Credit Agreement, whether now or hereafter existing, on the part of the Borrower to be performed or observed (collectively the Notes, the Credit Agreement, all security instruments and all related agreements, whether now existing or arising hereafter, are collectively referred to herein as the "Loan Documents"); and (iv) the due and punctual payment in full (and not merely the collectibility) of any and all other indebtedness, obligations and liabilities of the Borrower to the Agent and the Lenders of every kind and description, whether now existing or hereafter arising, whether direct, indirect or contingent, whether secured or unsecured, and howsoever evidenced, incurred or arising (all of the foregoing are collectively hereinafter called the "Obligations").

2. The Guarantor expressly agrees that the Agent and/or any Lender may, in its sole and absolute discretion, without notice to or further assent of the Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of the Guarantor hereunder: (i) waive compliance with, or any default under, or grant any other indulgences with respect to, the Loan Documents; (ii) modify, amend or change any provisions of the Loan Documents (other than this Guaranty); (iii) grant extensions or renewals of or with respect to the Loan Documents, and/or effect any release, compromise or settlement in connection therewith; (iv) agree to the substitution, exchange, release or other disposition of the Borrower or of all or any part of the collateral securing the Obligations; (v) make advances for the purpose of performing any term or covenant contained in the Loan Documents, with respect to which the Borrower shall be in default; (vi) assign or otherwise transfer the Loan Documents, including, without limitation, this Guaranty, or any interest therein; and (vii) deal in all respects with the Borrower, the Obligations or any collateral securing the Obligations as if this Guaranty were not in effect. The obligations of the Guarantor under this Guaranty shall be absolute and unconditional, irrespective of the genuineness, validity, regularity, enforceability or priority of the Loan Documents or any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

3. The liability of the Guarantor under this Guaranty shall be primary, direct and immediate and not conditional or contingent upon pursuit by the Agent or any Lender of any remedies it may have against the Borrower or any other party with respect to the Loan Documents, whether pursuant to the terms thereof or otherwise. No exercise or nonexercise by the Agent or any Lender of any right given to it hereunder or under the Loan Documents, and no change, impairment or suspension of any right or remedy of the Agent or any Lender, shall in any way affect any of the Guarantor's obligations hereunder or give the Guarantor any recourse against the Agent or any Lender. Without limiting the generality of the foregoing, neither the

Agent nor any Lender shall be required to make any demand on the Borrower and/or any other party, or otherwise pursue or exhaust its remedies against the Borrower or any other party, before, simultaneously with or after, enforcing its rights and remedies hereunder against the Guarantor. Any one or more successive and/or concurrent actions may be brought hereon against the Guarantor, either in the same action, if any, brought against the Borrower and/or any other party, or in separate actions, as often as the Agent, in its sole discretion, may deem advisable.

4. The Guarantor hereby expressly waives: (i) diligence, presentment and demand for payment and protest of nonpayment; (ii) notice of acceptance of this Guaranty and of presentment, demand, dishonor and protest; (iii) notice of any default hereunder or under the Loan Documents and of all indulgences; (iv) demand for observance or performance of, or enforcement of, any terms or provisions of this Guaranty or the Loan Documents; (v) notice of extensions of credit by the Agent or any of the Lenders to the Borrower and of any change in the rate at which interest accrues under the Loan Documents; (vi) all other notices and demands otherwise required by law which the Guarantor may lawfully waive; (vii) the right to assert in any action or proceeding hereupon any setoff, counterclaim or other claim which it may have against the Agent or any Lender; (viii) all rights of subrogation, reimbursement or contribution against the Borrower which might otherwise arise by reason of the Guarantor's execution, performance or payment of this Guaranty; and (ix) the benefit of all other principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof. As further consideration for the loan or loans by the Agent and the Lenders to the Borrower and as a material inducement to the Agent and the Lenders to make the loan or loans and accept this Guaranty, the Guarantor hereby irrevocably waives, disclaims and relinquishes all claims, whether based in equity or law, whether by contract, statute or otherwise, that the Guarantor might now or hereafter have against the Borrower or any other person that is primarily or contingently liable on the Obligations guaranteed hereby or that arise from the existence or performance of the Guarantor's obligations under this Guaranty, including, but not limited to, any right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim or remedy of the Borrower against the Agent or any Lender or any collateral security that the Agent or any Lender now has or hereafter acquires.

5. If the Guarantor shall advance any sums to the Borrower or its successors or assigns, or if the Borrower or its successors or assigns shall be or shall hereafter become indebted to Guarantor, such sums and indebtedness shall be subordinate in all respects to the amounts then or thereafter due and owing to the Agent and the Lenders.

6. The Guarantor hereby covenants and agrees not to dispose of all or any substantial part of the Guarantor's assets nor cause nor suffer any substantial diminution of the Guarantor's net worth as the same exists on the date hereof, and that any of the foregoing shall, at the option of a holder of the Notes or any other Obligations, its successors and assigns, be void and of no effect.

7. The Guarantor hereby covenants and agrees that Guarantor will, at Guarantor's expense, annually deliver to the holder(s) of the Obligations financial statements accurately reflecting all changes in Guarantor's net worth for such year. The Guarantor hereby represents

and warrants that (i) the financial statements that were delivered to the Agent and the Lenders as an inducement to the making of the loans are correct and complete, do not omit any material information and fairly present the financial position of the Guarantor as of the date or dates of such financial statements, (ii) since such date or dates there has been no material adverse change in the financial position of the Guarantor, and (iii) neither the Guarantor nor any firm or corporation in which the Guarantor possesses more than a five percent (5%) interest is in default under any material obligation or agreement or a party to any pending or threatened litigation or proceeding which would have a materially adverse effect on the Guarantor or such firm or corporation. The Guarantor agrees that the representations set forth in the preceding sentence will apply to the financial statements to be delivered to the Agent and the Lenders pursuant to the first sentence of this Section 7.

8. In each case of happening of any of the following events (each of which is herein sometimes called an "Event of Default"):

(a) any representation or warranty made in this Guaranty or in any report, certificate, financial statement or other instrument furnished or to be furnished in connection with this Guaranty, shall prove to be false or misleading in any material respect; or

(b) default in the payment of any indebtedness of the Guarantor to the Agent or any Lender, when the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or by acceleration or otherwise; or

(c) default in the due observance or performance of any covenant, condition or agreement contained in this Guaranty or in any agreement now or hereafter securing payment of this Guaranty; or

(d) default with respect to any evidence of indebtedness of the Guarantor for borrowed money or default under any agreement giving rise to monetary remedies, which, when aggregated with all other such defaults, exceeds $25,000, if the effect of such default is to permit the holder(s) of such indebtedness to accelerate the maturity of such indebtedness, or if any such indebtedness is not paid at maturity; or

(e) the Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee, custodian or liquidator of any of his property, (ii) admit in writing his inability to pay his debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated a bankrupt or insolvent or be the subject of an order for relief under Title 11 of the United States Code, or (v) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a

petition filed against him in any proceeding under any such law or corporate action shall be taken for the purpose of effecting any of the foregoing; or

(f) there shall be filed against the Guarantor an involuntary petition seeking the appointment of a receiver, trustee, custodian or liquidator of a Guarantor or a substantial part of the Guarantor's assets, or an involuntary petition under any bankruptcy, reorganization or insolvency law of any jurisdiction, whether now or hereafter in effect (any of the foregoing petitions being hereinafter referred to as an "Involuntary Petition"); or

(g) final judgment for the payment of money which, when aggregated with all other outstanding judgments against the Guarantor, exceeds $25,000, shall be rendered against the Guarantor, if the same shall remain undischarged (unless fully bonded upon terms satisfactory to the Agent and the Lenders) for a period of thirty (30) consecutive days, or an execution in respect of any judgment shall have issued; or

(h) the occurrence of any attachment of any deposits or other property of the Guarantor in the hands or possession of the Agent or any Lender, or the occurrence of any attachment of any other property of the Guarantor in an amount exceeding $25,000 in the aggregate which shall not be discharged within thirty (30) days of the date of such attachment, or an execution in respect of such judgment shall have issued; or

(i) for any reason Guarantor shall cease to be the beneficial and legal owner of the membership interests of the Borrower he currently owns; or

(j) the occurrence of an "Event of Default" as defined in the Credit Agreement, which "Events of Default" are incorporated herein by reference as if set forth at length herein; or

(k) the Guarantor shall die or be judicially declared incompetent;

then and upon any such Event of Default and at any time thereafter during the continuance of such Event of Default, at the election of the Agent and the Lenders, the Notes and the Obligations and any and all other obligations of the Borrower and the Guarantor and each of them to the Agent and the Lenders shall for the purposes of this Guaranty immediately become due and payable, both as to principal and interest, without presentment, demand, or protest, all of which are hereby expressly waived, anything contained herein or in the Notes or other evidence of such obligations to the contrary notwithstanding. In the event of an acceleration of the Borrower's obligations for the purposes of this Guaranty solely as a result of an Involuntary Petition as specified in paragraph (f) above, such acceleration shall be rescinded if within sixty (60) days following the filing of such Involuntary Petition, such Involuntary Petition shall have been dismissed and there shall then exist no other Event of Default under this Guaranty.

9. All notices, demands, requests or other communications given hereunder or in connection herewith shall be in writing and either mailed, sent by nationally recognized overnight courier service, or personally delivered, addressed to the party to receive such notice at its address set forth below or at such other address as such party may hereafter designate by notice given in like fashion:

If to the Agent:

Textron Financial Corporation
c/o Westminster Development Bank
40 Westminster Street, 6th Floor
Providence, Rhode Island 02903
Attention: Katherine C. Marien, President
Telecopy No.: (401) 621-5054

with a copy (except for routine communications) to:

Mary P. Heffner, Esquire
Edwards & Angell, LLP
2800 BankBoston Plaza
Providence, Rhode Island 02903
Telecopy No.: (401) 276-6611

If to the Guarantor:

George W. Stevens
c/o St. George Broadcasting, LLC
405 Olcott Avenue
Hammond, Indiana 46320
Telecopy: (219) 844-6190

with a copy (except for routine communications) to:

F. Thomas Moran, Esq.
Wilkinson Barker Knauer, LLP
2300 N Street N.W., Suite 700
Washington, DC 20037-1128
Telecopy: (202) 783-5851

or, as to each party, at such other address as shall be designated by such parties in a written notice to the other party complying as to delivery with the terms of this Section. All such notices, requests, demands and other communication shall be deemed given upon receipt by the party to whom such notice is directed.

10. Any payments made by the Guarantor under the provisions of this Guaranty shall, if made to the Agent, be made in accordance with the payment provisions contained in the Credit Agreement.

11. Payment and performance of the Guarantor's obligations hereunder are secured by a certain Securities Pledge Agreement of even date herewith by and among the Guarantor, William L. Fleming, William J. Backus, Jr. and John D. Artuso, as pledgors thereunder, and the Agent, on behalf of the Lenders, as pledgee thereunder (the "Pledge Agreement"). All rights and remedies afforded to the Agent and the Lenders by reason of this Guaranty, the Pledge Agreement, and the Loan Documents, or by law, are separate and cumulative and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies. Without limiting the generality of the foregoing, the Agent may apply the net proceeds received by the Agent under the Pledge Agreement to the payment of obligations secured by the Pledge Agreement other than obligations under this Guaranty and without modifying, reducing, extinguishing or affecting any of the Guarantor's obligations hereunder. No delay or omission by the Agent in exercising any such right or remedy shall operate as a waiver thereof. No waiver of any rights and remedies hereunder, and no modification or amendment hereof, shall be deemed made by the Agent unless in writing and duly executed. Any such written waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of the Agent or any Lender, and no single or partial exercise of any right or remedy hereunder shall preclude further exercise of any other right or remedy.

12. The obligations of the Guarantor to make payment in accordance with the terms of this Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Borrower or its respective estates, in bankruptcy or reorganization resulting from the operation of any present or future provision of the Federal Bankruptcy Act or other statute or from the decision of any court. The Guarantor agrees that in the event any amounts referred to herein are paid in whole or in part by the Borrower or by the Guarantor, the Guarantor's liability hereunder shall continue and remain in full force and effect in the event that all or any part of any such payment is recovered from the Agent or any Lender as a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

13. THE GUARANTOR, TO THE EXTENT THAT THE GUARANTOR MAY LAWFULLY DO SO, HEREBY SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF RHODE ISLAND, THE STATE OF INDIANA AND OF EACH STATE IN WHICH THE BORROWER IS NOW OR HEREAFTER MAY BE LOCATED (COLLECTIVELY, THE "DESIGNATED JURISDICTIONS") AND THE UNITED STATES DISTRICT COURTS HAVING JURISDICTION OR SITTING IN THE DESIGNATED JURISDICTIONS, AS WELL AS TO THE JURISDICTION OF ALL COURTS FROM WHICH AN APPEAL MAY BE TAKEN FROM THE AFORESAID COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF THE GUARANTOR'S OBLIGATIONS UNDER OR WITH RESPECT TO THIS GUARANTY, AND EXPRESSLY WAIVES ANY AND ALL OBJECTIONS THE GUARANTOR MAY

HAVE AS TO VENUE IN ANY OF SUCH COURTS. THE GUARANTOR ALSO WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS GUARANTY AND AGREES THAT IN THE EVENT THIS GUARANTY SHALL BE ENFORCED BY SUIT OR OTHERWISE, OR IF THE AGENT OR ANY LENDER SHALL EXERCISE OR ENDEAVOR TO EXERCISE ANY OF ITS REMEDIES UNDER THE LOAN DOCUMENTS OR GUARANTY, THE GUARANTOR WILL REIMBURSE THE AGENT AND THE LENDERS, UPON DEMAND, FOR ALL EXPENSES AND DAMAGES INCURRED IN CONNECTION THEREWITH, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES.

14. THIS GUARANTY SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF RHODE ISLAND APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SAID STATE.

15. In case this Guaranty or any one or more of the provisions contained herein shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been included.

16. The parties hereto, and any person not a party hereto for whose benefit the Agent acts hereunder, acknowledge that the Agent has been requested to act as agent for the Lenders hereunder pursuant to the terms of the Credit Agreement, and that the Agent, to the extent it may so act hereunder, shall exercise all of the rights and remedies hereunder on behalf of, and as agent for the benefit of, the Lenders and each of them. Without limiting the generality of the foregoing, the Agent is authorized to execute and deliver, from time to time, on behalf of the Lenders, any and all amendments and modifications to this Guaranty and any and all waivers to any conditions herein or any Event of Default hereunder.

***The next page is a signature page***

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the day and year first above written.

(George W. Stevens)

STATE OF Indiana
COUNTY OF LAKE

In Hammond, In, on the 26th day of October, 1999, before me personally appeared George W. Stevens, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed.

Cynthia A. Kasper
Notary Public
Print Name: Cynthia A. Kasper
My commission expires: 6-12-2000

[SEAL]